In re Kimberly Anderle ABMA, Debtor.

Bankruptcy No. 96 B 26051.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 25, 1997.

Fulton Sheen, LaGrange, IL, for Debtor.

Michael Berland, trustee.

### *MEMORANDUM OPINION ON DEBTOR'S MOTION TO ALTER OR AMEND JUDGMENT*

JACK B. SCHMETTERER, Bankruptcy Judge.

This proceeding relates to the bankruptcy case originally filed by Kimberly Anderle Abma ("Debtor" or "Mrs. Abma") under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* ("Code") on October 2, 1996. Debtor received her bankruptcy discharge on February 9, 1997. Subsequently, she moved here to bar her former spouse from asserting claims against Debtor and her property pursuant to Code § 524(a). On June 13, 1997, the Debtor's motion was denied. However, that Order barred the non-debtor spouse from using any marital debt for the purpose of creating a personal obligation on the part of the Debtor as to any discharged debt. The Debtor moved to alter or amend the July 13 Order. For reasons stated below, the relief sought in Debtor's motion is denied, but the Order will be amended to make clear that the former husband may show any such debt as a factual basis for the state court judge to determine equitable property distribution under Illinois law.

### *Jurisdiction*

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (O).

### *Background*

Debtor and Terry Abma ("Mr. Abma") were married on July 27, 1987. On October 5, 1995, Mr. Abma filed a petition for dissolution of marriage in the Circuit Court of Cook County Illinois, Domestic Relations Division. The petition for dissolution stated that irreconcilable differences had arisen between the parties and sought a judgment of dissolution of marriage and an equitable distribution of the marital property.

On October 2, 1996, Debtor filed this Bankruptcy petition. Mr. Abma was scheduled as an unsecured creditor for an undisclosed amount of loans from him to Debtor that were incurred through 1995. Although it is required in the official Statement of Financial Affairs form that Debtor list any pending suits, administrative proceedings, garnishments, or attachments, she failed to schedule the pending divorce action. Indeed, there was no mention in the bankruptcy petition of her divorce proceedings. Debtor signed the Statement of Financial Affairs on September 23, 1996.

Mr. Abma received notice of the meeting of creditors under Code § 341 and of the deadline for filing an objection to discharge. However, he did not appear personally or through his counsel at the meeting of creditors, nor did he file an objection to discharge. On November 29, 1996, the Chapter 7 Trustee filed a final report commonly filed in a noasset case, stating that there were no assets to be administered for benefit of creditors.

The February 9, 1997, order of discharge provided under § 524 of the Code that,

> [a]ll creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by paragraph 2 above are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect such debts as personal liabilities of the above-named debtor.

Paragraph two of that Order stated that any judgment "heretofore or hereafter obtained in any court other than this court is null and void as a determination of the personal liabil-

ity of the debtor with respect to any [discharged debt]." *Id.*

Debtor filed a motion here to enforce the § 524 discharge injunction. This motion was denied on June 13, 1997. However, the order denying the motion also stated that Mr. Abma was "barred from using any marital debt for the purpose of creating a personal obligation on [Debtor's part] as to any discharged debt."

On June 23, 1997, Debtor filed the instant motion to alter or amend that order of June 13. On July 7, 1997, an order was entered denying Debtor's relief requested for reasons to be more fully set forth later in an opinion. This Opinion states the grounds for such denial, and the order entered separately this date again denies the relief requested by Debtor, but amends the June 13 order so as to clarify its effect.

### *DISCUSSION*

■ "One of the objectives of the bankruptcy code is to give the debtor a fresh start, while that of the state matrimonial court is to provide the non-debtor spouse with adequate means for support." *Matter of Palmer*, 78 B.R. 402, 404 (Bankr.E.D.N.Y. 1987). These two goals can often be in conflict. Equitable distribution proceedings under state law affect title to and possession of property of the estate and as a result can indirectly implicate a bankruptcy proceeding. *In re Cole*, 202 B.R. 356, 360 (Bankr.S.D.N.Y. 1996). Sometimes those state court proceedings create a claim against a bankruptcy estate.

> To the extent that the state matrimonial court adjudicates an equitable distribution in favor of the non-debtor spouse, such award becomes a claim within the context of [the Bankruptcy Code]. The non-debtor spouse's claim is an entitlement against the debtor's estate, and thus she becomes one of the general unsecured creditors of the estate.

*Palmer*, 78 B.R. 402, 406 (Bankr.E.D.N.Y. 1987). However, a property settlement does not always create a debtor-creditor relationship. *In re Brown*, 168 B.R. 331, 334–35 (Bankr.N.D.Ill.1994)

In this case, Debtor argues that her former spouse's attempts to obtain an equitable distribution of marital property in state court under Illinois matrimonial law could interfere with her fresh start and her discharge. She argues that her former spouse had notice of the bankruptcy and was listed in her bankruptcy petition as an unsecured creditor, and therefore any claims he may assert were discharged. Mr. Abma concedes that he is barred from using any marital debt for the purpose of creating a personal obligation on Debtor's part as to any discharged debts. He argues that he is not seeking any award of marital property in return for the debt owed to him by Debtor prior to his discharge, but rather he seeks an equitable distribution of property under Illinois law based in part upon his former contributions to the marital estate.

■ Under Illinois law, the state court may consider a number of factors in determining how to make equitable distribution of marital property, several of which are the contribution of each party to the acquisition of the property, the duration of the marriage, the age, health, station, occupation, and needs of each spouse, and any tax consequences from the property division. 750 ILCS 5/503(d); *In re Marriage of Talty*, 166 Ill.2d 232, 237–38, 209 Ill.Dec. 790, 793, 652 N.E.2d 330, 333 (1995).

Debtor principally relies on two cases which she asserts for the proposition that the right to an equitable distribution of marital property is a general unsecured claim which can be discharged through the bankruptcy code. Debtor's Motion at 3 (citing *Hoffman v. Hoffman*, 157 B.R. 580, 582 (E.D.N.C. 1992), *aff'd*, 998 F.2d 1009 (4th Cir.1993); *Perlow v. Perlow*, 128 B.R. 412 (E.D.N.C. 1991)). Although these cases offer insight into the potential conflict between the objectives of bankruptcy law and family laws, they are inapposite to Debtor's position.

In *Perlow v. Perlow*, the District Court enjoined a claim for equitable distribution because that claim was actually one constituting a general unsecured claim against property of the estate. 128 B.R. at 415. In *Perlow*, the equitable distribution issue was pending in the divorce proceeding at the time

Mr. Perlow filed his bankruptcy petition. In his bankruptcy petition he had listed a contingent unsecured claim for division of marital property on behalf of his spouse. Mrs. Perlow never filed any complaint objecting to discharge or motion to modify the stay. *Id.* at 414, 416. Mr. Perlow subsequently filed an Adversary Complaint to determine the non-debtor spouse's claim. The bankruptcy judge liquidated the equitable distribution claim in light of requirements under the state equitable distribution statute and determined that the claim was without value. That claim was therefore held to be discharged in bankruptcy.

The District Court opinion in *Perlow* stated that in North Carolina a claim for equitable distribution is a statutory entitlement under state matrimonial law that creates only a "right to an equitable distribution of that property, whatever a court should determine that property is." *Id.* at 415. As such, it falls within the Bankruptcy Code definition of a claim. *Id.* (citing 11 U.S.C. § 101(5)(A) and 101(12)). It further found that the non-debtor spouse's rights in specific marital property were cut off by the bankruptcy filing, leaving the non-debtor spouse with a general unsecured claim against the estate. *Id.* at 415. It was held that, because § 524(a) operates as an injunction against continuation of an action to collect, recover, or offset a discharged debt as a personal liability of the debtor, therefore the non-debtor spouse was enjoined from pursuing her claim for equitable distribution in state court. *Id.* at 416–17.

The holding in *Perlow* does not, however, justify an order preventing Mr. Abma from pursuing his equitable distribution claim. The *Perlow* opinion noted that the bankruptcy court had liquidated Mrs. Perlow's claim for equitable distribution and determined it was of no value, *id.* at 414, and then applied the North Carolina equitable distribution statute, N.C. Gen.Stat. § 50–20, which contains factors similar to those in the Illinois statute.

No such finding was ever made in this case. Debtor here, like the debtor in *Perlow*, could have filed an Adversary case here to value and determine her husband's

equitable distribution claim to marital property since their marital property had not yet been divided and distributed. If a bankruptcy court that had made no equitable distribution determination were to view § 524 as enjoining parties from asking the state court from making such a determination, how would the distribution proceeding in that court be resolved? While a claim for equitable distribution is an unsecured claim against the estate, if no court has yet made any determination as to equitable distribution of marital property, the non-debtor spouse is not enjoined by Code § 524 or the discharge injunction from pursuing his or her equitable distribution claim in state court.

Debtor also cites *Hoffman v. Hoffman,* 157 B.R. 580 (E.D.N.C.1992), as support for her present motion. The debtor in *Hoffman* failed to schedule his non-debtor spouse as a creditor. However, she was on the service list and received notice of the bankruptcy filing, meeting of creditors and the order setting the bar date. *Id.* at 582. Hoffman's Plan under Code Chapter 11 was confirmed in November of 1989. The non-debtor spouse filed an Adversary proceeding seeking, among other relief, an equitable distribution of marital property. The parties then agreed that marital dissolution proceedings would be handled by the state court. Moreover, to the extent that any remaining actions such as the equitable distribution proceeding were not already allowed or discharged in the bankruptcy, such proceedings were also agreed to be determined by the state court. Although an order was entered to this effect, the non-debtor spouse took no steps either to file a proof of claim in bankruptcy or to pursue her divorce action. *Id.* at 582.

The non-debtor spouse's right to equitable distribution was found in *Hoffman* to be a general unsecured claim which could be discharged in bankruptcy. *Id.* at 583. However, it was also held that the non-debtor spouse's rights were not cut off because the debtor failed to list the spouse as a creditor or otherwise alert her to the fact that her equitable distribution rights might be affected in the pending bankruptcy. *Id.* Reasoning in the *Hoffman* opinion centered around

notice. It pointed out that, although the nondebtor spouse had "actual notice of the bankruptcy proceeding, she had no notice that her marital claims against Debtor were at issue." *Id.* at 584. The opinion also found that "[t]he debtor could have elected to invoke the jurisdiction of the bankruptcy court to determine the marital property rights of the [spouse], but he elected not to do so." *Id.*

While Mr. Abma knew of this bankruptcy proceeding, he did not seek this court's approval to pursue any claim. He proceeded with his equitable distribution claim only after Debtor was granted her discharge. However, the Abma's pending divorce and dissolution actions were not referenced anywhere within the bankruptcy petition. The unsecured debt listed for Debtor's former spouse is listed as "loans." No obligation for equitable dissolution of marital property was mentioned or scheduled by Debtor. Mr. Abma was not in any way put on notice that Debtor's bankruptcy was intended to or would affect the marriage dissolution proceeding, nor could he have learned that from the bankruptcy filings. Under the *Hoffman* ruling, the facts presented here raise the issue as to whether the non-debtor spouse was aware or could ever have become aware that Mrs. Abma intended that his marital rights be or might be extinguished in bankruptcy. *Hoffman*, 157 B.R. at 584. *Hoffman* also held that "[t]he debtor could have elected to invoke the jurisdiction of the bankruptcy court to determine the marital property rights of [the non-debtor spouse], but elected not to do so." 157 B.R. at 584. Likewise, Debtor here could have asked here that the parties' rights in the marital property be determined in the bankruptcy proceeding, but elected not to do so.

■ Where an award for marital dissolution has not been made at the time a bankruptcy petition is filed, "the trustee's status as a hypothetical lien creditor cuts off the non-debtor spouse's inchoate rights in marital property." *Cole*, 202 B.R. at 360. "Upon the filing of the Chapter 7 all of the property of the debtor becomes property of the estate." 11 U.S.C. § 541. "Since no equitable distribution award had vested at the time of the filing of the petition, the debtor's property came into the estate free of the claims of the spouse." *Palmer*, 78 B.R. at 406.

■ Thus, while a discharge in bankruptcy might discharge a non-debtor spouse's claim for equitable distribution out of marital property, that is not so where the debtor neither lists the equitable distribution of marital property as a claim nor lists the divorce action as a pending legal proceeding, thus giving no notice to the non-debtor spouse that the bankruptcy court to exercise jurisdiction over equitable distribution of the marital property.

Debtor argues that she failed to list the pending dissolution action because she did not want to limit her discharge solely to the equitable distribution proceeding. Whatever her motives, as a result she limited her discharge of debts to the unspecified "loans" she received from her husband and her resulting debt. Mr. Abma was not on notice that his property rights were to be extinguished by the bankruptcy court. For that matter, the bankruptcy court was not asked to determine marital property rights and did not do so.

■ Additionally, the Chapter 7 Trustee found in a no-asset report that the estate had no assets worth administering for the benefit of creditors, thereby abandoning Debtor's claims to marital property as an estate asset. *See Behrens v. Woodhaven Ass'n*, 87 B.R. 971, 973 n. 1 (Bankr.N.D.Ill.1988) (no-asset report plus closing of case result in abandonment). When a trustee thereby abandons property to the debtor, there remains no basis for bankruptcy court jurisdiction, and the effect is to revert such property to ownership rights under state law. *In re Dally*, 202 B.R. 724, 727 (Bankr.N.D.Ill.1996). Accordingly, this Court cannot now adjudicate dissolution rights in marital property that were abandoned.

■ However, any loans which Mr. Abma may have made to Debtor have clearly been discharged through the bankruptcy proceeding.

Title 11, United States Code, section 524(a) provides that a discharge in a bankruptcy case voids any judgment to the extent that it is a determination of the personal liabili-

ty of the debtor with respect to a pre-petition debt, and "operates as an injunction against the commencement of continuation of an action ... to collect, recover, or offset any ... [discharged] debt as a personal liability of the debtor", whether or not the debtor has waived discharge of the debt involved.

*Perlow,* 128 B.R. at 416–17 (citing 11 U.S.C. § 524(a)(1), (2)). Thus, because any prepetition claim Mr. Abma may have had for "loans" was discharged on February 9, 1997, along with Debtor's other debts, Mr. Abma has been enjoined by the discharge injunction under Code § 524 from pursuing any monetary claim for loans except as a factual basis for determining equitable distribution of marital property under Illinois law. This will not constitute an "offset" forbidden by § 524(a). *See Perlow,* 128 B.R. at 416–17 (because equitable distribution claim was not discharged, no violation of § 524 would occur). "Set off is an equitable right of a creditor to deduct a debt it owes to the debtor from a claim it has against the debtor arising out of a separate transaction." Samuel A. Maizel, *Setoff and Recoupment in Bankruptcy,* 753 PLI/Comm. 733, 739 (1997). The right to offset a debt allows entities that owe each other money to apply their mutual debts against each other so as to avoid "the absurdity of making A pay B when B owes A." *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995). Mr. Abma's claim for equitable distribution does not result in a setoff. Moreover, this claim was not discharged, so there would be no violation of § 524.

Finally, Debtor maintains the issue of whether her law degree is property of the marital estate. That issue was not presented in the original motion and is not presently before this Court on the motion to alter or amend.

### CONCLUSION

Thus, the Order of June 13 was correct, and Debtor's motion to alter or amend that Order so as to obtain her originally requested relief will be denied.

For reasons set forth above, Debtor's request for relief in her motion to alter and amend the Order entered July 7, 1997, will be denied. The state court may continue with and resolve the equitable distribution proceedings before it.

The order of discharge did discharge the loans owed to the non-debtor spouse. Mr. Abma may not pursue any claim for loans pursuant to the discharge injunction under 11 U.S.C. § 524, but he is not foreclosed from showing such loans as a factual basis for determining equitable distribution of marital property under Illinois law.