In re Angela Howard LEJEUNE.

Gregory P. LeJeune, Plaintiff,

v.

Angela Howard LeJeune, Defendant.

Bankruptcy No. 00–14561.
Adversary No. 00–1212.

United States Bankruptcy Court,
E.D. Louisiana.

Sept. 18, 2002.

Edward J. Sisk, Timothy P. Rooney, Southern Legal Clinics, PLC, Metairie, LA, for Debtor.

R. L. Landreneau, Jr., Metairie, LA, for Plaintiff.

## MEMORANDUM OPINION

JERRY A. BROWN, Bankruptcy Judge.

The parties submitted this proceeding for a decision on the briefs. Plaintiff, Gregory P. LeJeune, the ex-husband of the debtor, Angela Howard LeJeune, seeks a ruling that his unliquidated claim for reimbursement of one-half of the com-

munity debts that he paid is a postpetition claim, or alternatively, that it is an equitable distribution claim against a future settlement of the marital estate. Because the divorce decree was entered before the debtor filed her bankruptcy petition, the court finds that his claim, if any, is a prepetition claim.

### I. *Findings of Fact*

Although the parties did not attach any affidavits or exhibits to their trial memoranda, the relevant facts do not appear to be at issue.

The debtor and Mr. LeJeune were married on March 11, 1990. They physically separated on June 7, 1998, and were granted a divorce on February 23, 1999 in the case of *Gregory P. LeJeune v. Angela Howard LeJeune,* Case No. 84448, 17th Judicial District Court, Parish of Lafourche, State of Louisiana.

During the marriage, the community incurred community debts totaling $30,658.33, which were paid by Mr. LeJeune following their physical separation on June 7, 1998.

Mrs. LeJeune filed the pending Chapter 7 case on June 27, 2000. Her bankruptcy schedules listed an unsecured nonpriority claim owed to Mr. LeJeune for "community property debts" in an unknown amount.[1] She did not schedule as an asset any interest in community property, and did not list the divorce action in the statement of financial affairs. On August 17, 2000, the debtor filed amended schedules, in which she amended Schedule B—Personal Property—to include a claim for community property reimbursement.[2]

Mr. LeJeune filed a proof of claim for "Community Reimbursement" of $15,329.16, representing one-half of the

---

1. Pl. 1 in Case No. 00–14561, Schedule F.

2. Pl. 4 in Case No. 00–14561.

community debts he claims to have paid.[3] The proof of claim indicated that the debts were incurred from 1998 to 2000.

Mr. LeJeune filed the pending adversary proceeding on October 17, 2000, alleging that his reimbursement claim of $15,329.16 is nondischargeable under 11 U.S.C. § 523(a)(15).

Mrs. LeJeune received a discharge of all dischargeable debts by an order of discharge entered on November 13, 2000.[4] The parties have not yet settled the community property estate issues between them.

At the time that the debtor filed her bankruptcy petition, her monthly income was $1,153.90.[5] She is presently unemployed.

## II. *Conclusions of Law*

Mr. LeJeune's complaint seeks a ruling that his claim for reimbursement of $15,329.16 is nondischargeable. His trial memorandum, however, requests that the court either:

(1) hold that his reimbursement claim is a postpetition claim, which has not yet arisen pending settlement of the community property under the principles of *In re Miller*;[6] or

(2) follow the rationale of *In re Abma*,[7] and hold that it is an equitable distribution claim against a future settlement of the marital estate.

### A. *Pre- or postpetition claim*

■ Mr. LeJeune initially argues that the court should follow the principles of *In re Miller*, and find that his reimbursement claim is a postpetition claim, which has not yet arisen because the community property issues between him and the debtor have not been settled.

In *Miller*, the debtor filed his bankruptcy petition on July 2, 1998. Thereafter, on August 14, 1998, the debtor and Ms. Miller executed a "marital dissolution agreement", which was incorporated into a divorce decree entered by the state court on August 24, 1998. The marital dissolution agreement provided that the outstanding marital debt would be the debtor's sole responsibility. When Ms. Miller attempted to execute on the judgment, the debtor filed an adversary proceeding averring that Ms. Miller's actions violated the discharge injunction of 11 U.S.C. § 524(a). The court held that the debtor's obligation under the marital dissolution agreement was a postpetition obligation that was not dischargeable. The court recognized, however, that "[i]f not for the postpetition marital dissolution agreement, Mr. Miller would not owe Ms. Miller reimbursement for her credit card payments" because the debt would have been discharged in the bankruptcy.[8]

*Miller* does not help Mr. LeJeune's case because here there is no postpetition agreement to settle the community property. In addition, the divorce decree between Mr. and Mrs. LeJeune was entered before Mrs. LeJeune filed her bankruptcy petition. Thus, the cases cited in Miller, for the proposition that "[c]ourts have consistently held that a debtor's obligation to a former spouse under a postpetition divorce decree or settlement constitutes a postpetition debt and is not dischargeable

---

3. Proof of Claim # 3.

4. Pl. 12 in Case No. 00–14561.

5. Pl. 1, Schedule I.

6. 246 B.R. 559 (Bankr.E.D.Tenn.2000).

7. 215 B.R. 148 (Bankr.N.D.Ill.1997).

8. 246 B.R. at 563.

under Section 727(b)"[9] are not applicable to the pending case.

The court is also guided by the well-reasoned decision of *In re Emelity*,[10] which has facts that are closer to the pending case than the facts of *Miller*. In *Emelity*, the debtor's marriage was terminated in November 1993. The debtor filed his bankruptcy petition on April 4, 1994, at which time the community property had not yet been divided. The debtor listed his ex-wife in his bankruptcy schedules as an unsecured creditor holding a contingent and disputed claim that related to the pending property settlement in their divorce. In February 1996, after a trial on the property division issues, the court ordered the debtor to pay a $10,000 equalization payment to his ex-wife. The ex-wife recorded a judgment lien reflecting the equalization payment. When the debtor tried to sell real property acquired after his discharge, he moved to reopen his bankruptcy case to avoid and expunge his ex-wife's lien on the ground that it violated the discharge injunction of Section 524.

The *Emelity* court analyzed the line of cases, many of which were cited in *Miller*, which held that "a debt arising from a postpetition dissolution decree accrues at the time the state court issues an order creating a right to payment. In these cases the debt at issue is viewed as arising postpetition and is therefore nondischargeable".[11] The *Emelity* court rejected the so-called "right to payment" or "accrued state law claim" test applied in this line of cases because these cases interpreted the definition of "claim" under the Bankruptcy Code "more narrowly than Congress intended".[12] Instead, the *Emelity* court applied the Ninth Circuit law holding that a claim will be held to have arisen prepetition, even when the actual right to payment matures postpetition, when the parties could have fairly contemplated a claim prior to bankruptcy.[13] *Emelity* held that it was within the fair contemplation of the parties that a contingent claim regarding the property division existed at the time of the debtor's bankruptcy filing. Thus, the debtor's ex-wife's claim arose prepetition, the equalization payment was discharged, and the lien filed by the ex-wife based on the equalization payment would be expunged.

The *Emelity* case is more analogous to the pending case than *Miller* because in *Emelity*, similar to this case, the divorce decree was entered before the bankruptcy filing and the community property issues had not been settled or determined as of the time of the bankruptcy filing. In this situation, under Louisiana law as discussed more fully below, the claim for reimbursement is a prepetition claim.

As recognized by *In re Hassanally*, cited in *Emelity*, only debts that arise prepetition are dischargeable, and only actions for prepetition claims are enjoined by 11 U.S.C. § 524(a)(2).[14] A "debt" means "liability on a claim".[15]

A "claim" means

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisput-

9. 246 B.R. at 562.

10. 251 B.R. 151 (Bankr.S.D.Cal.2000).

11. 251 B.R. at 155–56.

12. 251 B.R. at 156 (*quoting In re Hassanally*, 208 B.R. 46, 51 (9th Cir. BAP 1997)).

13. 251 B.R. at 156.

14. 11 U.S.C. § 524(a)(2); *Hassanally*, 208 B.R. at 49.

15. 11 U.S.C. § 101(12).

ed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment . . . [16]

▮ The definition of "claim" includes a right to payment that is both contingent and disputed. "By providing for the 'broadest definition of claim' Congress intended to ensure that 'all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.' "[17] This policy promotes the debtor's fresh start.[18]

▮ Although state law determines the existence of a claim based on a cause of action, federal law determines when the claim arose for bankruptcy purposes.[19] Thus, the court looks to state law to determine the existence of Mr. LeJeune's claim for reimbursement.

▮ Under Louisiana law, a judgment of divorce terminates the community property regime retroactively to the date of the filing of the divorce petition.[20] Civil Code art. 2358 provides that:

Upon termination of a community property regime, a spouse may have a claim against the other spouse for reimbursement in accordance with the following provisions.[21]

Thus, under Louisiana law, Mr. LeJeune's claim for reimbursement arose when the community property regime ended, at the time of the divorce decree. That occurred in this case before the filing of the debtor's petition. Mr. LeJeune's proof of claim asserting his claim for reimbursement indicates that the claim arose during the period from 1998 to 2000. Therefore, under either state law or bankruptcy law, which defines claims even more broadly, Mr. LeJeune's reimbursement claim is a prepetition claim. Mr. LeJeune's argument that the court should find it is a postpetition claim under the precepts of *In re Miller* is unavailing.

B. *Equitable distribution of a future settlement?*

▮ Mr. LeJeune next argues that the court should follow the rationale of *In re Abma*,[22] and hold that his claim for reimbursement is an equitable distribution claim against a future settlement of the marital estate.

This argument is equally unpersuasive. In Abma, the debtor did not schedule the divorce petition that was pending at the time of her bankruptcy filing, but did list her husband as an unsecured creditor for an undisclosed amount for "loans".[23] The case does not indicate the date of the divorce decree. The debtor was attempting to prevent her ex-husband from obtaining an equitable distribution of marital property in Illinois state court, and argued that because her ex-husband had notice of the bankruptcy, any claims made against

---

16. 11 U.S.C. § 101(5).

17. *Emelity*, 251 B.R. at 154; *Hassanally*, 208 B.R. at 50 (*quoting* H.R.Rep. No. 595, 95th Cong., 2d Sess. 1, 309 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6266; S.Rep. No. 989, 95th Cong., 2d Sess. 21–22 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5807–08.)

18. *Emelity*, 251 B.R. at 154; *Hassanally*, 208 B.R. at 50.

19. *Emelity*, 251 B.R. at 154; *Hassanally*, 208 B.R. at 50 (*quoting Johnson v. Home State*

Bank, 501 U.S. 78, 83, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991)).

20. Louisiana Civil Code articles 159 and 2356.

21. La. Civil Code art. 2358.

22. 215 B.R. 148 (Bankr.N.D.Ill.1997).

23. 215 B.R. at 149.

her by her ex-husband were discharged. The ex-husband asserted that he was not seeking an award of marital property in return for the debt owed to him by the debtor before the discharge, but argued that he was seeking an equitable distribution of property under Illinois law based upon his former contributions to the marital estate. The Abma court held:

> [W]hile a discharge in bankruptcy might discharge a nondebtor spouse's claim for equitable distribution out of marital property, that is not so where the debtor neither lists the equitable distribution of marital property as a claim nor lists the divorce action as a pending legal proceeding, thus giving no notice to the non-debtor spouse that the bankruptcy court to [*sic*] exercise jurisdiction over equitable distribution of the marital property.[24]

Thus, because the debtor listed neither a claim for reimbursement nor the pending divorce proceedings in her schedules, the non-debtor spouse was not on notice that the "Debtor's bankruptcy was intended to or would affect the marriage dissolution proceeding, nor could he have learned that from the bankruptcy filings."[25] The court held, however, that the discharge order did discharge the "loans" owed to the non-debtor spouse, which had been listed in the schedules.

The facts of *Abma* differ from the case at bar because Mrs. LeJeune listed "community property debts" as an unsecured debt owed to Mr. LeJeune in her schedules. Thus, Mr. LeJeune was put on notice that the debtor's bankruptcy would affect the marriage dissolution proceeding. The *Abma* case does not apply.

---

24. 215 B.R. at 152.

25. *Id.*

26. 11 U.S.C. § 523(a)(15).

## C. *Section 523(a)(15)*

█ The court next considers Mr. LeJeune's complaint under Section 523(a)(15). Section 523(a)(15) excepts from discharge any debt:

> not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . .; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.[26]

In this case, no determination of the amount of Mr. LeJeune's reimbursement claim, if any, has yet been made. Therefore, Mr. LeJeune's claim under Section 523(a)(15) is not ripe for adjudication.

If Mr. LeJeune intends to proceed with his claim under Section 523(a)(15),[27] he must file within 15 days a motion to modify the stay to proceed against the debtor in the appropriate state court to liquidate his claim for reimbursement, and must set it for hearing.

---

27. At the time the briefs were filed, the debtor was not working. Consequently, it may be difficult for Mr. LeJeune to prevail in the balancing test required by Section 523(a)(15).